UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN JEFFREY ELLIS,

      Plaintiff                          Civil Action No.  15-13985

v.                                 HON. JOHN CORBETT O'MEARA
                                         U.S. District Judge
                                       HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

      Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Brian Jeffrey Ellis ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below,  I recommend that Defendant's Motion for Summary Judgment [Docket #15] be DENIED and that Plaintiff's Supplemental Motion for Summary Judgment [Docket #14] be GRANTED to the extent that the case is remanded for further administrative proceedings.

-1-

## I.   PROCEDURAL HISTORY

On July 22, 2013, Plaintiff applied for DIB and SSI, alleging disability as of July 27, 2010 (Tr. 168-179). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on July 16, 2014 in Lansing, MI (Tr. 36). Administrative Law Judge ("ALJ") Paul W. Jones presided.  Plaintiff, represented by John R. Kobrin, testified (Tr. 41-61), as did Vocational Expert ("VE") Zachary Matthews (Tr. 85-90), and Plaintiff's wife, Anita Liss-Ellis (Tr. 92-95).  On September 5, 2014, ALJ Jones found that Plaintiff was not disabled (Tr. 24-32).  On September 18, 2015, the Appeals Council denied review (Tr. 1-4).  Plaintiff filed suit in this Court on November 13, 2015.

## II.   BACKGROUND FACTS

Plaintiff, born October 19, 1969, was 44 at the time of the administrative decision (Tr. 32, 168).  He graduated from high school and worked previously as field officer, truck driver, and vending machine repairer (Tr. 196).  He alleges disability as a result of lumber spine radiculopathy, depression, migraines, confusion, and shoulder problems (Tr. 195).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

He had been recently advised that knee problems could be lessened with steroid injections (Tr. 42).  *Plaintiff counsel interjected that his client had put his own health problems "on the back burner" because of his wife's breast cancer diagnosis* (Tr. 42). Plaintiff stood 5' 11" and weighed just under 200 pounds (Tr. 43).  He lived in a single-family home with his wife and 19-year-old daughter (Tr. 45).  He was currently behind on his mortgage payments (Tr. 46).

-2-

Plaintiff could read, write, and perform mathematical problems (Tr. 46). He had attended truck-driving school but had no other formal education beyond high school (Tr. 46-47). He had current health insurance through his wife's employer (Tr. 48). He stopped working in July, 2010 after his back "popped" while he was doing yard work (Tr. 50). He was unable to work due to back pain and migraine headaches (Tr. 51).

Plaintiff did not sleep on a regular schedule (Tr. 52). He coped with migraine headaches, exacerbated by light, by lying down with the curtains drawn (Tr. 52). He experienced migraines about three to four times each week (Tr. 52). The truck-driving and vending machine repair positions required him to lift between 20 and 50 pounds (Tr. 53-56). He stopped working after incurring excessive absences due to back problems and because his medication at the time caused him to "los[e] track of days" (Tr. 56). His elbow problems caused pain and finger numbness (Tr. 57). As a result of the elbow problems, he experienced gripping problems (Tr. 58). On a scale of one to ten, he rated his current level of pain at "eight" (Tr. 60).

In response to questioning by his attorney, Plaintiff testified that his house was currently in foreclosure and that he had recently declared bankruptcy (Tr. 64). He testified that he had right shoulder surgery in 2008, but returned to work after a three or four month recuperation (Tr. 64-65). He reported that he also experienced right hand tremors (Tr. 66). Plaintiff stated that he had seen a specialist for the right hand and arm problems but had not received a diagnosis due to his inability to tolerate the pain caused by EMG studies (Tr. 67).

Plaintiff also alleged problems concentrating since his back injury and that he experienced difficulty communicating his needs to his treating sources (Tr. 68). He acknowledged May, 2012 treating records showing a diagnosis of DeQuervain's

Tenosynovitis[1] (Tr. 69-70).  He testified that since the alleged onset of disability, his headaches were more likely to become full-blown migraines (Tr. 71).  He reported that multiple epidural steroid injections gave him, at best, short-term relief (Tr. 73).  Plaintiff also alleged depression, adding that he loved his former work and "hate[d]" his current physical limitations (Tr. 76).  He experienced crying jags (Tr. 84).  He characterized himself as "mentally disorganized" (Tr. 77).

Plaintiff reported that his low back pain radiated into his leg and foot (Tr. 77-78).  He testified that he was unable to walk more than 300 feet, stand for more than 15 minutes, or sit for extended periods (Tr. 78).  He reported difficulty using stairs and that his migraine medication took up to 15 minutes to "kick in" and did not relieve his headaches for more than 45 minutes (Tr. 79).  He alleged the medication side effect of "clouded judgment" but noted that he had declined opiates for pain management to avoid becoming a "zombie" (Tr. 80).  He had gained 30 pounds since ceasing work and experienced sleep difficulties due to back spasms and sleep apnea (Tr. 80-81).  He could not tolerate the two-hour drive to his son's college (Tr. 83).

### B.  Testimony by Plaintiff's Wife

Anita Liss-Ellis testified that she had been married to Plaintiff since 1999 (Tr. 92).  She reported that Plaintiff's mental condition had "deteriorated considerably" since his back injury (Tr. 93).  She noted that Plaintiff was unable or unwilling to participate in his former activities of camping and small game hunting and spent his days "sitting on the couch" (Tr. 93).  She testified that Plaintiff's frequency of migraines had increased, due in part to stress

---

[1]

DeQuervain's Tenosynovitis is "a painful condition affecting the tendons on the thumb side of[the]wrist."www.mayoclinic.org/diseasesconditions/de-quervains-tenosynovitis/basics/definition/con–2002723 (last visited, November 28, 2016).

(Tr. 93). She reported that her perception that Plaintiff experienced increased headaches was based on his habit of closing the shades during daylight hours and general sensitivity to light (Tr. 94). She noted that Plaintiff experienced decreased mental spontaneity (Tr. 94-95).

### C. Medical Records[2]

#### 1. Treating Records

In April, 2008 Plaintiff underwent right shoulder acromioplasty and rotator cuff reconstruction without complications (Tr. 221). In August, 2008, orthopedist David H. Janda, M.D. found that Plaintiff no longer required a sling and was capable of writing and doing paperwork (Tr. 220).

July, 2010 treating records by Keturah Schacht, M.D. note Plaintiff's report of low back pain (Tr. 243). He reported "four to five" pain on a scale of one to ten (Tr. 243). Treating records also note Plaintiff's report of "a recent increase in migraine headaches" and right knee pain (Tr. 243). Plaintiff denied lower extremity radiculopathy (Tr. 243). He was prescribed Flexeril (Tr. 242). Later the same month, Plaintiff reported increased symptoms after experiencing a "'pop' in his back" (Tr. 239). The following month, Plaintiff reported an improvement in symptoms, noting that he declined to take Flexeril because it caused migraine headaches (Tr. 237). The same records show that he participated in physical therapy (Tr. 237). Plaintiff declined an offer of antidepressants (Tr. 234). October, 2010 records note "an exacerbation of . . . chronic migraine headaches" (Tr. 233).

In April, 2011, Dr. Schacht found that Plaintiff was unable to perform a job that required him to lift more than 10 pounds (Tr. 230). She noted that epidural steroid injections did not improve Plaintiff's condition (Tr. 228). Plaintiff reported that the back pain radiated

---

[2]Records significantly predating the alleged onset of disability date of July 27, 2010 are included for background purposes only.

into his right leg (Tr. 228). The same month, Plaintiff began a series of epidural steroid injections (Tr. 253, 259, 264, 268). Steven B. Silverman, M.D. noted that a recent MRI showed "no evidence of significant spinal canal or cord compression" (Tr. 267). Dr. Silverman observed a reduced range of lumbar spine motion and tenderness and reports of bilateral lower extremity weakness (Tr. 249-250, 267).

A May, 2012 x-ray of the left hand after Plaintiff "felt something pop" after "lifting something heavy" was negative for fracture or dislocation (Tr. 255). The same month, Randall Borsch, M.D. noted that Plaintiff reported "some benefit" from a recent epidural injection (Tr. 269). Dr. Borsch noted "no acute distress" and a normal mood and affect (Tr. 269). The following month, Aashish Deshpande, M.D. noted that Plaintiff experienced an increased range of motion after receiving steroid injections. Pg. ID 381.[3] However, in June, 2012, Dr. Deshpande noted that steroid injections did not provide long-term relief. Pg. ID 380. August, 2012 records state that Plaintiff experienced increased lower extremity radiculopathy. Pg. ID 379. The same month, a nerve conduction study of the lower extremities was halted due to Plaintiff's "nerve root sensitivity." Pg. ID 378. Dr. Deshpande observed full muscle strength in the lower extremities. *Id.* The following month, Dr. Deshpande noted that Plaintiff's condition had improved. Pg. ID 376.

February, 2013 treating records by Dr. Deshpande note the presence of "mild nerve root irritation" and Plaintiff's report of increased lower extremity symptoms (Tr. 275). Dr. Deshpande and Plaintiff agreed to continue to avoid the use of narcotic medication (Tr. 275). Plaintiff reported level "eight" pain (Tr. 276). In March, 2013, Plaintiff sought treatment for right wrist pain and swelling (Tr. 272). He was diagnosed with DeQuervain's Tenosynovitis

---

[3] Portions of the record that were not included with the transcript that was originally filed, but submitted to this Court later, are identified by Page ID.

and advised to treat the condition conservatively with ice, massage, and splinting (Tr. 272). He was re-prescribed Midrin after reporting migraine headaches occurring four times a week (Tr. 272). August, 2013 treating records note a history of sleep apnea and depression (Tr. 273). In November, 2013, Plaintiff was diagnosed with left elbow ulnar neuritis pending an EMG study (Tr. 297). An EMG study of the upper extremities was halted due to Plaintiff's back pain (Tr. 302).

In March, 2014, Plaintiff reported ongoing right elbow pain (Tr. 294). In April, 2014, Lawrence Handelsman, M.D. noted Plaintiff's report that he refrained from EMG testing due to his low pain threshold (Tr. 290). An examination of the spine showed moderate foramina encroachment and sciatica (Tr. 291). Dr. Handelsman opined that Plaintiff would "not be able to return to work if he continues to function at this level" (Tr. 291). In May, 2014, Dr. Handelsman noted that Plaintiff did not experience significant improvement from Neurontin, beta-blockers, NSAIDs, or antidepressant medication (Tr. 288). Plaintiff reported that he was not interested in surgery, in part, because of his wife's recent breast cancer diagnosis (Tr. 288). Dr. Handelsman noted that x-rays showed only "minimal" arthritic changes to the right knee (Tr. 288).

## 2. Consultative and Non-Examining Sources

In February, 2013, psychologist Craig S. Brown, Ed.D. examined Plaintiff on behalf of the SSA, noting Plaintiff's report that he drove himself 20 miles to the consultative examination (Tr. 277). Plaintiff noted L5-S1 radiculopathy resulting from nerve root irritation, frequent migraine headaches, incontinence, and the onset of depression following his July, 2010 back injury (Tr. 277). He reported that his fear of becoming addicted motivated his decision to decline narcotics (Tr. 279). He reported that his daughter helped him grocery shop (Tr. 280). Plaintiff reported depression, anxiety, and apathy but exhibited

a normal affect (Tr. 282, 286).  Brown assigned a GAF of 58, concluding that Plaintiff "may

benefit from mental health treatment (Tr. 287).

### D.  VE Testimony

Citing  the  *Dictionary  of  Occupational  Titles,* (*"DOT"*), VE Zachary Matthews

testified that none of Plaintiff's past relevant work was performed at less than the "medium"

exertional level[4] (Tr. 62).  The ALJ posed the following question,  describing a hypothetical

individual of Plaintiff's age, education, and work experience:

> [A]ssume a person . . . who's able to do light work . . . but who also requires
> a sit/stand option that allows a person to sit or stand at will, provided they're
> not off task for more than 10 percent of the work period (Tr. 62).

 Based on the hypothetical limitations, the VE found that the individual would be  unable to

perform Plaintiff's past relevant work, but could perform the light, unskilled work of a router

 (179,000 jobs in the national economy); information clerk (55,000); and caller (86,000) (Tr.

63).  The VE testified that the need to be off task more than 15 percent of the workday would

eliminate all competitive employment (Tr. 89).  He stated that the  router and caller position

would require frequent reaching and handling and that the information clerk position could

be performed with occasional fingering (Tr. 89).

### E.  The ALJ's Decision

Citing the medical records, ALJ Jones found that Plaintiff experienced the severe

impairment of "lumbar degenerative disc disease with stenosis" but that the  condition did

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds
at a time and occasionally lifting or carrying articles like docket files, ledgers, and small
tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50
pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and
that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with
frequent lifting or carrying of objects weighing up to 50 pounds.

not meet or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 26, 28). The ALJ found that Plaintiff experienced mild limitation in concentration, persistence, or pace (Tr. 28). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work limited by the need to "sit or stand, at will, provided he is not off task more than 10 percent of the work period" (Tr. 28).

The ALJ discounted the alleged degree of physical and psychological limitation, noting that Plaintiff "did not appear to be in distress" at the hearing (Tr. 30). The ALJ noted that the condition of migraine headaches did not prevent Plaintiff from working for many years (Tr. 30). The ALJ cited September, 2010 x-rays and an October, 2010 MRI of the lower spine showing only mild degenerative changes with "no evidence of significant spinal canal or cord compression" (Tr. 30). He noted that none of the treating sources recommended surgery for the back condition (Tr. 30).

## III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into

account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### A. The Evaluation of the Medical Evidence

Plaintiff argues, in effect, that the ALJ erred by failing to articulate the Step Three finding that the condition of "lumbar degenerative disc disease with stenosis" did not meet or medically equal a listed impairment.[5]  *Plaintiff's Supplemental Brief,* 18-22 (*citing* Tr. 26, 28), *Docket #14.*   Plaintiff also argues that the condition of migraine headaches was improperly omitted from the work-related impairments at Step Two of the sequential analysis.  *Id.* at 23.

### 1. The Step Three Analysis

"At the third step of the administrative analysis, a claimant meeting or medically equaling the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits." *Reynolds v. Commissioner of Social Security*, 424 Fed.Appx. 411, 414, 2011 WL 1228165, *2 (6th Cir. April 1, 2011); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Id.* (citing 20 C.F.R. § 404.1525(a)).  While "[t]he Sixth Circuit does not require a heightened articulation standard from the ALJ at Step Three of the sequential evaluation process" *Grohoske v. Comm'r of Soc. Sec.,* 2012 WL 2931400, *3 (N.D.Ohio, July 18, 2012), it "has made clear the step-three 'reasons requirement is both a procedural and substantive requirement, necessary in order to facilitate effective and meaningful judicial

---

[5]Plaintiff's argument that the ALJ failed to discuss the Step Three findings is prefaced by two pages of regulations and case law pertaining to the "Treating Physician's rule." *Plaintiff's Brief* at 18-20.  However, he does not provide any examples of how the treating physician analysis was substantively or procedurally deficient.

review.'" *Brock v. Colvin,* 125 F.Supp.3d 671, 672 (N.D.Ohio, 2015)(*citing Reynolds,* 424 Fed.Appx. at 414).   Nonetheless, the Court may "overlook the ALJ's failure to articulate his Step Three findings" if the error is found to be "harmless in nature." *M.G., supra,* 861 F.Supp.2d 846, 859 (E.D. Mich.2012)(*citing Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir.2008)).

Plaintiff contends that evidence supports the finding that he meets Listing 1.04A (Disorders of the Spine).   The threshold requirement of Listing 1.04 can be met with "evidence of a herniated nucleus . . . resulting in compromise of a nerve root (including the cauda equina) or the spinal cord."   20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04. Plaintiff cites the transcript evidence showing "positive straight-leg raising tests" and "nerve root irritation." *Plaintiff's Brief* at 21 (*citing* Tr. 275, 291, 376, 379).   He contends that along with the threshold requirement, he meets  subsection A of the Listing:

> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test . . . ."  § 1.04.

In discussing his Step Two findings, the ALJ acknowledged the medical records showing a positive straight-leg raising test and nerve root irritation (Tr. 26-27).   However, his rationale for the Step Three finding is limited to the boilerplate statement that Plaintiff did not experience "an impairment or combination impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1" (Tr. 28).   Although Listing 1.04 is applicable to Plaintiff's impairment of lumbar degenerative disc disease, the administrative decision does not mention the Listing.

-12-

In certain cases, an insufficiently articulated Step Three finding can be cured by a discussion of the evidence supporting the finding at earlier or subsequent steps in the sequential analysis. *See Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411, (6th Cir. January 31, 2006). However, in contrast to *Bledsoe,* the Court is unable to discern an explanation for the Step Three finding anywhere in ALJ's determination.   While a question remains as to whether Plaintiff actually meets the criteria of Listing 1.04A, the record contains, at a minimum, evidence that he experienced some of the limitations included in the Listing sufficient to require a Step Three analysis. The RFC for a range of light work, with nothing more, cannot be interpreted to satisfy the Step Three articulation requirement.  The ALJ's failure to mention the applicable Listing, much less its criteria,  requires a remand for articulation of the Step Three findings.  Given that the ALJ acknowledged the positive straight-leg raising tests and nerve root irritation (Tr. 26-27), his observation that one imagining study did not show "significant" abnormalities (Tr. 30) does not make the omission of a Step Three analysis harmless error.  Likewise, the ALJ's later rejection of Drs. Schacht and Handelsman's findings that Plaintiff was, in effect, incapable of exertionally light work (Tr. 30), by itself, cannot be construed to satisfy the Step Three "reasons requirement." *Reynolds* at 424.   An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Commissioner, Social Sec. Administration*, 55 Fed.Appx. 333, 339, 2003 WL 236419, *5 (6th Cir. January 30, 2003); *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995). Because the ALJ failed to provide a rational for a key portion of the administrative analysis, a remand for clarification is required.

-13-

### 2. The Migraine Headaches

The ALJ's discussion of the condition of migraine headaches also requires supplementation. The ALJ declined to include the condition among the "severe" impairments at Step Two, stating only that Plaintiff had "a history of headaches but was able to work as a truck driver with them and earn substantial income" (Tr. 27). He noted further that the headaches were "controlled with medication" (Tr. 27).

"[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." *Farris v. Secretary of HHS*, 773 F.2d 85, 89 (6th Cir.1985). At Step Two, a condition can be deemed "not severe ... only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Id.* at 90 (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)). 20 C.F.R. § 404.1521(a) defines a non-severe impairment as one that does not "significantly limit [the] physical or mental ability to do basic work activities." *See also* SSR 85-28 1985 WL 56856,*3 (1985)(same). "Basic work activities" include the physical functions "such as walking, standing, sitting" as well as the capacity for "seeing, hearing, and speaking." § 404.1521(b)(1-2). Despite the low bar for qualification as a "severe" impairment, the omission of an impairment causing work-related limitations at Step Two is of "little consequence," provided that the ALJ considers "all impairments" in crafting the RFC. *Pompa v. Commissioner of Social Sec.*, 73 Fed.Appx. 801, 803, 2003 WL 21949797, * 1 (6th Cir. August 11, 2003).

-14-

Even assuming that the above discussion was sufficient to support the finding that the migraines were not "severe," the ALJ's finding that the condition was not severe because Plaintiff was able to work for many years with the condition is undermined by his later acknowledgment of testimony and treating records showing that the migraines had increased in frequency and intensity since the alleged onset of disability (Tr. 29). The ALJ does not provide any evidence contradicting the testimony of both Plaintiff and his wife that the severity of the migraines increased (Tr. 71, 93) and indeed, a number of the treating records note reports of intensifying symptoms (Tr. 233, 237). The ALJ's discussion of evidence that the frequency and intensity of the migraines increased after the onset of disability undermines his rationale that the condition did not create work-place limitations because Plaintiff was able to work for many years despite the condition. The ALJ not only failed to provide an adequate rationale for finding the condition non-severe at Step Two, but omitted consideration of the allegations of migraine in crafting the RFC. As such, a remand is required for a discussion of the reasons for finding that the condition did not create work-place limitations.

### B. The Credibility Determination

For overlapping reasons, a remand is appropriate to the extent that Plaintiff argues that the ALJ's credibility determination did not contain an adequate rationale for discounting the allegations of worsening migraines. *Plaintiff's Brief* at 23-25. Despite the general deference accorded an ALJ's credibility findings, the findings must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 248-249 (6th Cir.2007)(mischaracterization of the record in support of a credibility determination does not constitute substantial evidence).

-15-

While a remand is warranted, it cannot be said that "all essential factual issues have been resolved" as required for an award of benefits. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir.1994). The ALJ's omission of a Step Three analysis of the back condition and unsatisfactory rationale for rejecting the allegations of migraines mandates a remand for further administrative proceedings rather than an award of benefits. Therefore, I recommend that the case be remanded to the administrative level for further proceedings consistent with the above findings.

## VI.   CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Docket #15] be DENIED and that Plaintiff's Supplemental Motion for Summary Judgment [Docket #14] be granted to the extent that the case is remanded for further administrative proceedings.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

-16-

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: December 9, 2016


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on December 9, 2016, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager

-17-